IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-CV-00087-M

ANN-MARIE MENDIBLE,                   )
                                      )
        Plaintiff,                    )
                                      )        ORDER
v.                                    )
                                      )
SPECIAL PROCEEDINGS DIVISION OF       )
WAKE COUNTY CLERK; U.S. BANK          )
TRUST, N.S., AS TRUSTEE OF LSF9       )
MASTER PARTICIPATION TRUST;           )
TRUSTEE SERVICES OF CAROLINA,         )
L.L.C.; MORTGAGE ELECTRONIC           )
REGISTRATION SYSTEMS INC.;            )
CALIBER HOME LOANS, INC.; et al,      )
                                      )
        Defendants.                   )

These matters come before the court on the Defendants' motions to dismiss [DE 11, 19,

23, 33, 41] and the Plaintiff's motion for leave to amend [DE 45]. The court finds its lacks subject-

matter jurisdiction over certain of the Plaintiff's claims, Plaintiff otherwise fails to state plausible

claims for relief, and the Plaintiff's motion does not cure the deficiencies. Therefore, Defendants'

motions are granted, and the Plaintiff's motion is denied as futile.

I.      **Background**

        This is not the Plaintiff's first attempt to sue for equitable relief and economic damages

based on a foreclosure order issued May 9, 2018; Plaintiff filed a lawsuit against Defendants

Mortgage Electronic Registration Systems Inc. ("MERS"), Trustee Services of Carolina, LLC

("Trustee"), and Caliber Home Loans, Inc. ("Caliber") on October 9, 2020, in Wake County

Superior Court, alleging claims of negligence, fraud, void or cancel assignment, breach of the

implied covenant of good faith and fair dealing, slander of title, and wrongful foreclosure. *See* DE 15-7.[1] In that case, the Honorable Paul C. Ridgeway granted the defendants' motions pursuant to N.C. R. Civ. P. 12(b)(1), (b)(6), and (b)(7), and dismissed Plaintiff's claims with prejudice. DE 15-9.

In this action, Plaintiff alleges the same claims against the same Defendants; has added two Defendants, U.S. Bank Trust, N.A. ("U.S. Bank") and "Special Proceedings Division of Wake County Clerk" ("Clerk"); and has added three claims for relief against all Defendants, due process in violation of the Fourteenth Amendment, violations of the Fair Debt Collection Practices Act ("FDCPA"), and violations of the Truth in Lending Act ("TILA"). Compl., DE 7. The factual allegations set forth in the Complaint here are identical to those alleged in the state court complaint. Compare DE 7 with DE 15-7.

Essentially, Plaintiff alleges that certain documents—i.e., promissory note, deed of trust, assignments of deeds of trust, and appointments of substitute trustees—have been executed and filed with respect to a mortgage loan initiated on June 1, 2007 (Compl. at ¶¶ 14-19). On December 21, 2016, Caliber sent a notice of default and election to sell to Plaintiff, which "did [not] identify the owner or 'Holder in Due Course' of Plaintiff's Deed of Trust and Note or who had authorized

---

[1] Generally, a court may not consider materials outside the pleadings without converting the Rule 12(b)(6) motion to a motion for summary judgment; however, several factors permit the court to consider the documents Defendants have attached to the present motions as exhibits. *See Brooks v. Serio*, No. 1:19-CV-209-MOC-WCM, 2019 WL 5858052 (W.D.N.C. Nov. 6, 2019). "First, a court may consider matters of public record in conjunction with a motion to dismiss, including specifically records from other court proceedings." *Id.* (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)). "Second, a court may properly examine documents that are referenced in the complaint." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "Third, and specifically related to res judicata, a court may take both judicial notice of facts from prior judicial proceedings and the filings from such proceedings." *Id.* (citing *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).

Caliber to enforce default" and "[s]aid notice was not filed in the Wake County Recorder's Office." In addition, an undated notice of foreclosure sale, which did not identify the owner or holder in due course of Plaintiff's Deed of Trust and Note or who had authorized Trustee to conduct a foreclosure sale, was sent to Plaintiff and filed in the Wake County Recorder's Office. On June 6, 2018, Trustee sold the subject property to U.S. Bank. Plaintiff avers that "at no time did Defendants know, in fact, who the actual beneficiary of the Deed of Trust was" and "the actual beneficiary of the Deed of Trust NEVER provided a declaration to Caliber stating that Plaintiff was in default."

Defendants responded to Plaintiff's Complaint by filing the present motions arguing that the court lacks subject-matter jurisdiction pursuant to the Eleventh Amendment or the *Rooker-Feldman* doctrine and that any claims not subject to these doctrines are barred by issue and/or claim preclusion and/or the applicable statute of limitations. Plaintiff counters that *Rooker-Feldman* and the preclusion doctrines do not apply and she otherwise states plausible claims for relief.

Plaintiff also filed the present motion for leave to amend, seeking to correct the name of Defendant "Special Proceedings" to "Wake County Clerk of Superior Court" ("Clerk"), add to and assert her due process claim solely against the Clerk, and add the following factual allegations:

25.     Plaintiff's Deed of Trust and Note or who had authorized Caliber to enforce default, pursuant to N.C.G.S.A. § 25-3-301. Said Notice was not filed in the Wake County Recorder's Office.

26.     May 9, Defendant Wake County Clerk of Superior Court granted Trustee Services of Carolina. LLC. the right to foreclosure [sic] on Plaintiff's property.

27.     June 22, final sale of Plaintiff's property to U.S. Bank of Trust NA as Trustee for LSF9 Master Participation Trust.

Prop. Am. Compl., DE 49. Defendants contend that Plaintiff's proposed amendments are futile.

3

## II. Legal Standards

### A. Rule 12(b)(1)

The Supreme Court instructs that

> [f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). "[T]he party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleading the facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *see also Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968) ("[T]he complaint must state on its face the grounds for its jurisdiction.").

The Fourth Circuit has recognized that a defendant may challenge subject matter jurisdiction in one of two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* When a defendant makes a facial challenge to subject matter jurisdiction, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. Second, the defendant may contend "that the jurisdictional allegations of the complaint [are] not true." *Id.* If the defendant challenges the factual predicate of subject matter jurisdiction, "[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations," without converting the motion to a summary judgment proceeding. *Id.* "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the

4

district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction."

Further, if a district court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action[,]" regardless of whether the relevant defendant against whom the claim was brought has moved the court seeking dismissal. Fed. R. Civ. P. 12(h)(3).

## B.    Rule 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility

5

of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

      C.      <u>Pro Se Litigants</u>

In analyzing motions to dismiss, "pro se pleadings are 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *King*, 825 F.3d at 214 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III.    Analysis

Before proceeding to determine whether Plaintiff states plausible claims for relief, the court must first examine whether it has subject-matter jurisdiction over this action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Defendants have launched a facial challenge to the Complaint and, thus, the court will treat all non-conclusory factual allegations as true. If the court finds that it has jurisdiction to resolve some or all of the Plaintiff's claims, it will proceed to determine whether Plaintiff's allegations state plausible claims for relief.

      A.     <u>Eleventh Amendment</u>

Construing her filings liberally, the court finds Plaintiff's claims against "Special Proceedings Division of the Wake County Clerk" are actually alleged against the Wake County Superior Court Clerk ("Clerk") in his/her official capacity. *See* Compl., DE 7; *see also* Prop. Am. Compl., DE 49. Such action is "clearly one against the state of North Carolina." *Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989). "The state has an Eleventh Amendment immunity

6

from an action for damages, for the Congress has made no move to impose § 1983 liabilities upon states, and North Carolina has done nothing to waive its immunity." *Id.* (citations omitted) (finding claim for damages against Clay County Superior Court clerk barred by sovereign immunity). The court finds it lacks subject-matter jurisdiction over the Plaintiff's claims for damages against the Clerk and, thus, these claims are dismissed.

Plaintiff does not respond to the Clerk's argument in this respect (*see* Resp., DE 39), but the court notes that she seeks both injunctive and declaratory relief. Compl., DE 7 at 17. "Even though sovereign immunity protects a state from liabilities for damages, equitable relief may still be available and appropriate." *Bright*, 865 F.2d at 626 (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). The *Ex Parte Young* exception to sovereign immunity "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not one against the state for purposes of the Eleventh Amendment." *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (quoting *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013)). In determining whether the exception applies, courts must "consider 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 242-43 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff seeks a declaration that the "the foreclosure of the Plaintiff's residence was wrongful" (Compl., DE 7 at 17); this declaration seeks retrospective relief and, thus, does not fit within the *Ex Parte Young* exception. Likewise, Plaintiff seeks to enjoin any "past" or "further violations of law, including [an injunction] on any attempts of the foreclosure sale." *Id.* The Plaintiff alleges that the foreclosure sale took place in 2018; therefore, this request for relief is also

7

retrospective.[2]  Finally, Plaintiff seeks an order "to cancel or void the Assignments of Deed of Trust" and "to quiet title in favor of Plaintiff and against Defendants." *Id.*  Again, these requests are retrospective in nature; Plaintiff's allegations demonstrate the Assignments occurred in December 2011 and March 2017, and U.S. Bank presumably took title to the property at the June 2018 foreclosure sale.  Thus, as Plaintiff fails to allege claims excepted by *Ex Parte Young*, her claims against the Clerk (including Count Nine raised solely against the Clerk) are dismissed for the court's lack of subject-matter jurisdiction.

      B.    *Rooker-Feldman* Doctrine

      Defendants contend that Plaintiff's claims are barred to the extent that they seek an order from this court overturning the state court's orders of foreclosure and dismissal.  Plaintiff counters that her claims "do not challenge the state court judgment itself but allege violation [sic] of her rights by the defendants" and she "assert[s] federal claims . . . not litigated in the state court." Resp. at 9, DE 36.

      "[O]nly the Supreme Court possesses the authority to exercise appellate jurisdiction over state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 249 (4th Cir. 2020).  While "Congress has given federal district courts original jurisdiction over various actions [it] has not 'authorized district courts to exercise appellate jurisdiction over state-court judgments.'" *Id.* (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002)).  Thus, under the *Rooker-Feldman* doctrine, "[a] litigant may not circumvent these jurisdictional mandates by

---

[2] Plaintiff's Count Ten also asserts a "claim" for declaratory and injunctive relief seeking an order "preventing Defendants from the foreclosure sale until a decision on the merits has been made in this case." Compl. at ¶ 86.  Plaintiff asserts that "declaratory relief is appropriate pursuant to 28 U.S.C. § 2201," but she actually seeks only an injunction (*see* ¶¶ 86, 89-95).  However, as the sale completed in June 2018, this request for relief is retrospective, if not moot, in this case; therefore, Count Ten is also dismissed against the Clerk for the court's lack of subject-matter jurisdiction.

instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)).

The Fourth Circuit has "consistently treated the *Rooker–Feldman* doctrine as jurisdictional, and '[b]ecause the *Rooker–Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis." *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 195–96 (4th Cir. 2001)). "The controlling question in the *Rooker–Feldman* analysis is whether a party seeks the federal district court to review a state court decision and pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual,' *Rooker–Feldman* is implicated." *Id.* at 235-36 (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)). The doctrine applies not only to matters directly addressed by the state court, but also to "claims which are 'inextricably intertwined' with state court decisions." *Id.* at 236 (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000)); *see also Plyler*, 129 F.3d at 731 ("The *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.").

9

Nevertheless, "*Rooker-Feldman* is a 'narrow doctrine.'" *Saimplice v. Ocwen Loan Servicing Inc.*, 368 F. Supp. 3d 858, 864 (E.D.N.C. 2019) (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To apply the doctrine, the court must determine that the party seeking relief in federal court has asked the court to "reverse or modify the state court decree." *Id.* (quoting *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006)). Accordingly, "if [the state-court loser] is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply." *Id.* (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006)).

The *Rooker-Feldman* doctrine may apply to losers of state foreclosure proceedings, *Saimplice*, 368 F. Supp. 3d at 864 (citations omitted), as well as losers of civil judgments. In this case, Mendible's claims—including wrongful foreclosure, slander of title, breach of covenant of good faith and fair dealing, and "void or cancel assignments"—challenge the legality of the foreclosure of her property and are inextricably intertwined with the factual and legal findings of the Wake County Superior Court's May 9, 2018 order authorizing foreclosure. *See id.* (citing *Plyler*, 129 F.3d at 731; *Jordahl*, 122 F.3d at 199). Furthermore, these claims, in addition to claims for fraud and negligence, which are all *based on the same facts alleged in this case*, were adjudicated and resolved (dismissed) by Judge Ridgeway's January 22, 2021 order. *See* State Am. Compl., DE 15-7, Order, DE 15-9. This court lacks subject-matter jurisdiction to sit in direct review of a state foreclosure action and state court judgment; therefore, the court dismisses Counts Three through Eight against Defendants MERS, Caliber, and Trustee for the court's lack of subject-matter jurisdiction.

## C.     Issue/Claim Preclusion

Defendants also assert that Plaintiff's claims are barred by res judicata, in that her claims and issues have been already litigated and resolved in state court. Plaintiff counters that res judicata does not apply because she names two new defendants and alleges two new claims in this action.

Res judicata operates to preclude subsequent litigation of certain matters when there has been a prior judgment between the same parties. *Schwartz v. J.J.F. Mgmt. Servs., Inc.*, 922 F.3d 558, 566-67 (4th Cir. 2019) (citation omitted). A prior judgment between the same parties may operate to bar subsequent litigation under one of two related res judicata doctrines: claim preclusion or issue preclusion. *Id.* When considering the preclusive effect of an earlier state court judgment on a new claim, courts must apply the "preclusion law of the State in which judgment was rendered." *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)). Therefore, to determine in this case the preclusive effect of the foreclosure order and/or state court judgment against MERS, Caliber, and Trustee, this court must apply North Carolina law. *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).

Claim preclusion, characterized as "res judicata" in North Carolina, applies when "a prior adjudication on the merits in a prior suit bars a subsequent, identical cause of action between the same parties or their privies," and also "prevents relitigation of claims that 'in the exercise of reasonable diligence, could have been presented for determination in the prior action.'" *Orlando Residence, Ltd. v. All. Hosp. Mgmt., LLC*, 375 N.C. 140, 150–51, 846 S.E.2d 701, 708, *reh'g denied*, 376 N.C. 532, 847 S.E.2d 891 (2020) (citations omitted). "The essential elements of res judicata are: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of

11

action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Id.* at 151, 846 S.E.2d at 708-09 (quoting *State ex rel. Utils. Comm'n. v. Thornburg*, 325 N.C. 463, 468, 385 S.E.2d 451, 453–54 (1989)).

In this case, the same claims against the same parties have been dismissed pursuant to the *Rooker-Feldman* doctrine; however, in the unlikely event that *Rooker-Feldman* is not applicable in this case, res judicata would bar the Plaintiff's claims alleging negligence, fraud, void or cancel assignments of deed of trust, breach of implied covenant of good faith and fair dealing, slander of title, and wrongful foreclosure (Counts Three through Eight), for which Plaintiff alleges the same facts as those alleged in the state court action, against MERS, Caliber, and Trustee.

Moreover, collateral estoppel, also known as issue preclusion, prevents parties from relitigating factual or legal issues already adjudicated in an earlier matter. *Musselwhite v. Mid-Atl. Rest. Corp.*, 809 F. App'x 122, 127–28 (4th Cir. 2020) (citing *Sykes v. Blue Cross & Blue Shield of N.C.*, 372 N.C. 318, 828 S.E.2d 489, 494 (2019)). Relevant here is "defensive non-mutual collateral estoppel," which "means that a stranger to the [earlier] judgment, ordinarily the defendant in the second action . . . relies upon a former judgment as conclusively establishing in [its] favor an issue." *Id.* at 128 (quoting *Mays v. Clanton*, 169 N.C. App. 239, 609 S.E.2d 453, 455 (2005)). Defensive non-mutual collateral estoppel is permitted if the party being collaterally estopped "had a full and fair opportunity to litigate" the issue in the earlier suit, *Sartin*, 535 F.3d at 288, and if the following four requirements for collateral estoppel generally are met: (1) the issues must be "the same as those involved in the prior action"; (2) the issues must "have been raised and actually litigated in the prior action" (i.e., "properly raised in the pleadings or otherwise submitted for determination and [is] in fact determined"); (3) the issues must have been "material and relevant to the disposition of the prior action"; and (4) "the determination of the issues in the

12

prior action" must have "been necessary and essential to the resulting" final judgment on the merits. *Musselwhite*, 809 F. App'x at 128 (citations omitted).

In this case, Counts Three through Eight are also alleged against U.S. Bank, but these claims are based on the same facts and identical claims presented to the state court.[3] *See* Compl., DE 7. Moreover, in its January 22, 2021 decision, the state court found that Plaintiff "failed to join a necessary party—i.e., U.S. Bank Trust N.A., as Trustee for LSF9 Master Participation Trust—and *amendment would be futile*." Order, DE 15-9 (emphasis added). The court finds that the issues raised and actually litigated by the Plaintiff in state court are the same as those raised here; the issues were material and relevant to the state court's dismissal order; and the determination of the issues was necessary and essential to the resulting judgment. *See Musselwhite*, 809 F. App'x at 128 ("when a court 'bases its judgment on multiple independent grounds, each of which have been fully litigated,' each independent ground is accorded preclusive effect") (quoting *Propst v. N.C. Dep't of Health & Human Servs.*, 234 N.C. App. 165, 758 S.E.2d 892, 897 (2014)). Therefore, to the extent they have not been dismissed pursuant to the Eleventh Amendment or the *Rooker-Feldman* doctrine, Counts Three through Eight and Ten are dismissed as precluded by res judicata and collateral estoppel.

D.    Remaining Claims

Counts One (violations of the FDCPA) and Two (violations of the TILA) against MERS, Trustee, Caliber, and U.S. Bank remain. These Defendants argue that they are not, or were not acting as, debt collectors subject to the FDCPA, that two of them are not subject to TILA's regulations, and that Plaintiff's claims are barred by the applicable statutes of limitations. Plaintiff

---

[3] In addition, Count Ten was not alleged in state court, but it seeks "Declaratory and Injunctive Relief preventing Defendants from the foreclosure sale" based on the same facts as those alleged in state court.

counters that Defendants did, in fact, act as debt collectors under the FDCPA and that the court should apply equitable tolling to halt the limitations periods due to Defendants' "fraudulent behavior."

          1.    *FDCPA Claims*

The Fourth Circuit has construed the FDCPA's definition of a debt collector as containing two parts: "[t]he first part defines the classes of persons that are *included* within the term 'debt collector,' while the second part defines those classes of persons that are *excluded* from the definition of debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017). The *Henson* court defines the first part as "(1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another*; or (3) a person who collects *its own debts*, using *a name other than its own* as if it were a debt collector." *Id.* The court describes the second part of § 1692a(6) as "defin[ing] the classes of persons that are excluded from the definition of debt collector, *so that a person who meets one of the definitions of debt collector contained in the first part of § 1692a(6) will not qualify as such if it falls within one of the exclusions*." *Id.* (emphasis added). Thus, "when assessing whether a person qualifies as a 'debt collector,' [courts] must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6) before considering whether that person falls into one of the exclusions contained in subsections 1692a(6)(A)-(F). If a person does not satisfy one of the definitions in the main text, the exclusions in subsections 1692a(6)(A)-(F) do not come into play." *Id.*

Here, Defendants MERS, Caliber, and U.S. Bank cite the exclusion in § 1692a(6)(F)(iii) contending that Plaintiff fails to allege both the first and second parts of the *Henson* definition. Plaintiff alleges that MERS was the "beneficiary" of the Deed of Trust at the loan's inception (¶

14

14) and later "assigned" the Deed of Trust to Bank of America, N.A. on December 16, 2011 (¶ 16). Nothing in these allegations demonstrates that MERS' principal purpose was to collect debts, that it regularly collected debts owed to another, or that it collected its own debts, using a name other than its own. Because Plaintiff fails to satisfy the definition as to MERS in the main text of the statute, the court need not consider the exclusions in the second part. Thus, Plaintiff fails to state a plausible FDCPA claim against MERS.

Likewise, Plaintiff fails to state a plausible FDCPA claim against Caliber. Plaintiff alleges that Caliber, acting as an "attorney in fact" for Bank of America, "purported to grant, assign, transfer, and convey" to U.S. Bank "all beneficial interest under the certain Deed of Trust" (¶ 17); Caliber, acting as an "attorney in fact" for U.S. Bank, "purport[ed] to Substitute the Trustee until Trustee Services of Carolina, L.L.C." (¶ 19); and Caliber "sent to Plaintiff via First Class Mail" a "Notice of Default and Election to Sell" (¶ 20). None of these facts support a finding that Caliber was a "debt collector" as defined in the main text of the FDCPA.

With respect to U.S. Bank, Plaintiff alleges that "all beneficial interest" in the Deed of Trust was assigned to U.S. Bank on March 23, 2017 (¶ 17); U.S. Bank appointed a substitute trustee on April 19, 2017 (¶ 19); and purchased Plaintiff's property by the foreclosure sale on June 6, 2018 (¶ 22). None of these facts support a finding that U.S. Bank was a debt collector under the FDCPA's main text and, therefore, Plaintiff fails to state a plausible FDCPA claim against U.S. Bank.

Finally, with respect to Defendant Trustee, Plaintiff alleges that Trustee was appointed as a substitute trustee on April 19, 2017 (¶ 19); Trustee "sold Plaintiff's property to U.S. Bank" (¶ 22); and Trustee sent to Plaintiff a "Notice of Foreclosure Sale" that took place on June 20, 2018 (¶ 21; Ex. J, DE 7-13). Trustee contends that under a recent Supreme Court opinion, the "'mere

act of enforcing a security interest through a non-judicial foreclosure does not fall under' the FDCPA." Mot., DE 42 at 14 (citing *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035 (2019)). Plaintiff does not respond to this argument. *See* Resp., DE 46.

In *Obduskey*, the Court found that, had the FDCPA included only the first, or "primary," definition of a debt collector, "a business engaged in nonjudicial foreclosure proceedings would qualify as a debt collector for all purposes." *Obduskey*, 139 S. Ct. at 1036. However, the Court determined that the "limited-purpose" definition (described in *Henson* as the "second part") presents an "insurmountable obstacle" to its first finding and concluded that "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Id.* at 1038. Thus, if Plaintiff's allegations do not support the application of § 1692f(6) to Trustee, it is not a debt collector under the FDCPA.

Section 1692f governs "unfair practices" under the FDCPA; subsection (6) describes:

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6). Trustee argues that Plaintiff does not allege a violation of subsection (6)(C) and, even if Plaintiff's allegations may be construed as stating violations of § 1692f(6)(A) and/or (B), the order of foreclosure has already determined that "the right to foreclose on the Property existed and Substitute Trustee had the right to serve as substitute trustee and, thus, to conduct the foreclosure sale, which legal conclusions expressly negate both Subsection (A) and (B) of Section 1692f(6) of the FDCPA." Mot., DE 42 at 16.

16

The court agrees; in fact, Judge Ridgeway ruled that "the rights of the parties to the foreclosure sale became fixed on or before June 19, 2018, upon expiration of the upset bid period under N.C.G.S. § 45-21.29A; the recordation of the Substitute Trustee's Deed on June 20, 2018; and the audited and recorded Final Report and Account of Foreclosure Sale entered on June 22, 2018." Order, DE 15-9. To the extent the Plaintiff's allegations may be liberally construed as that Trustee "had no present right" to possess the property or "no present intention" to sell the property, or that the property was exempt from sale by law, the court finds any such claims against Trustee (which was a party to the state court civil proceeding) barred by res judicata.

Even if Plaintiff's allegations were plausible, the FDCPA's statute of limitations bars Plaintiff's claims. The instant lawsuit was filed on February 24, 2021, and the factual bases of Plaintiff's claims, the latest of which occurred on June 20, 2018, fall outside the one-year statute of limitations under the FDCPA. 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) ("[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered.").

Plaintiff argues first that the statute of limitations "does not bar those portions of Plaintiff's FDCPA claims against defendants that seek recovery based on communications from those Defendants on or after February 1, 2019. Defendants continually directed prohibited communications to Plaintiff." Resp. 46 at 11. The Complaint contains no allegations regarding any such communications; rather, Plaintiff alleges generally that Defendant made false or misleading representations "in communications with Plaintiff that her loan had certain unpaid balances; monthly payments; delinquency statuses; unpaid fees; reinstatement amounts; escrow amounts due; payoff amounts due; insurance amounts due; and other amounts due." Compl. ¶¶

17

29-30. It is unclear in the pleading that any of these communications would have occurred after February 1, 2019, which would have been approximately eight months after the foreclosure sale.

Plaintiff also argues that the court should apply equitable tolling to halt the limitations period based on the Defendants' "fraudulent behavior." The Fourth Circuit has held that to toll a limitations period based on fraudulent concealment, "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (finding that equitable tolling may apply to halt the RESPA statute of limitations, "similarly worded" and "analogous [for] consumer-protection purposes" to TILA's provision). Here, Plaintiff contends that Defendants "engaged in a pattern and practice of defrauding Plaintiff in that, *during the life of the mortgage loan*, the Defendants failed to properly credit payments made and on the Subject Property based on Plaintiffs' alleged non-payment which they knew to be false." Resp., DE 46 at 12-13 (emphasis added). While Plaintiff demonstrates that she alleges the first requirement for equitable tolling, her allegations fail to show that she did not discover the alleged fraud during the limitations period (i.e., one year after they occurred) despite the exercise of due diligence. Rather, the last act alleged to have occurred by any Defendant was the foreclosure sale on June 20, 2018. Therefore, Plaintiff's FDCPA claims are barred by the statute of limitations.

Accordingly, Plaintiff fails to state plausible FDCPA claims against the Defendants, and the court will dismiss Count One.

        2.    *TILA Claims*

Plaintiff alleges that Defendants are "creditors" who violated 15 U.S.C. § 1641(g) by failing to notify her "in writing of the transfer of the loan from the original lender." Compl. at ¶¶

18

35-36. Defendants MERS and Trustee contend they are not creditors as defined by TILA, and all Defendants argue that the one-year statute of limitations bars Plaintiff's claims.

Section 1640(e) provides a one-year statute of limitations for the filing of a suit once a violation of TILA has occurred. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 278 (4th Cir. 2012) (citing 15 U.S.C. § 1641(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.")); *see also McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 362 (4th Cir. 2016) (affirming district court's dismissal of § 1641(g) claim as barred by the one-year statute of limitations). The TILA violations alleged here occurred thirty days after the transfer of the loan from the original lender (i.e., on December 16, 2011, MERS transferred its interest under the Deed of Trust to Bank of America (¶ 16)), or January 15, 2012. Even if Plaintiff alleged that the improper transfer occurred when the loan was transferred to U.S. Bank, such transfer occurred on March 23, 2017. Plaintiff did not file this action until February 24, 2021. Thus, the statute of limitations for those violations had long passed.

As with her FDCPA claims, Plaintiff argues that equitable tolling should apply. However, as set forth above, the court finds Plaintiff fails to demonstrate the fraudulent concealment necessary for the application of equitable tolling and, therefore, concludes that Plaintiff's TILA claims are barred by the statute of limitations. The court dismisses Count Two against all Defendants.

      E.     <u>Motion to Amend</u>

Following briefing on the motions to dismiss, Plaintiff filed the present motion seeking to amend her pleading. According to the red-lined version of her proposed Amended Complaint, Plaintiff adds the following factual allegations:

19

25. Plaintiff's Deed of Trust and Note or who had authorized Caliber to enforce default, pursuant to N.C.G.S.A. § 25-3-301. Said Notice was not filed in the Wake County Recorder's Office.

26. May 9, Defendant Wake County Clerk of Superior Court granted Trustee Services of Carolina, LLC the right to foreclosure [sic] on Plaintiff's property.

27. June 22, final sale of Plaintiff's property to U.S. Bank of Trust, N'A as Trustee for LSF9 Master Participation Trust.

Prop. Am. Compl., DE 49. In addition, Plaintiff seeks to clarify that she asserts a procedural due process claim solely against the Clerk, and she adds allegations to that claim essentially contending that the Clerk failed to "follow[ ] foreclosure laws and rules of procedure by allowing the defendant [Trustee] to defraud Plaintiff and the court by allowing them [sic] to submit fraudulent documents" in pursuit of the foreclosure. *Id.* at ¶¶ 28-36. Further, Plaintiff seeks additional relief for this claim in the form of an order enjoining the Clerk "from committing future due process violation[s] of the citizens of North Carolina." *Id.*, DE 49 at 20.

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings in this court. The Fourth Circuit instructs:

> Rule 15(a) directs that leave to amend shall be freely given when justice so requires. This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities.
>
> We have interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when
>
> > [1] the amendment would be prejudicial to the opposing party,
> >
> > [2] there has been bad faith on the part of the moving party, or
> >
> > [3] the amendment would have been futile.

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (internal quotation marks and citations omitted). Here, the court finds that granting Plaintiff's requested amendments would be futile, because they do nothing to cure the deficiencies described herein.

20

First, Plaintiff's factual allegations fail to cure any jurisdictional or limitations problems, fail to demonstrate that res judicata does not apply, and fail to bolster Plaintiff's federal claims. Also, proposed paragraph 25 appears to be nearly identical to paragraph 20, which provides

> 20.    A "Notice of Default and Election to Sell" was sent to Plaintiff via First Class Mail on or about December 21, 2016, by Caliber Home Loans, Inc. (Caliber) Said Notice did [not] identify the owner or "Holder in Due Course" of Plaintiff's Deed of Trust and Note or who had authorized Caliber to enforce default, pursuant to N.C.G.S.A. § 25-3-301. Said Notice was not filed in the Wake County Recorder's Office (Exhibit H).

Compl., DE 7. In addition, Plaintiff's proposed allegations regarding her due process claim fail to cure the fact that the Clerk is immune to a suit for damages and retrospective equitable relief. Further, Plaintiff fails to show how she has standing to seek her additional request for an injunction to stop any "future due process violation[s] of the citizens of North Carolina"; while the request is prospective in nature, Plaintiff does not allege she owns any other property in North Carolina,[4] and she is not permitted to seek relief on behalf of others. *See Jackson v. Johnson*, No. 5:18-CT-03197-D, 2019 WL 4493151, at *2 (E.D.N.C. May 17, 2019), *report and recommendation adopted*, 2019 WL 4511419 (E.D.N.C. Sept. 18, 2019) ("Jackson does not have standing to request relief on behalf of others.") (citing *Hummer v. Dalton*, 657 F.2d 621, 635-26 (4th Cir. 1981)); *see also Hafner v. Office of Thrift Supervision*, 977 F.2d 572, 1992 WL 238252, at *1 (4th Cir. Sept. 28, 1992) (holding that, although the pro se plaintiff "filed pleadings purporting to represent a group," he was "barred from representing anyone other than himself."). Because Plaintiff's proposed amendments fail to cure the deficiencies identified in this order, the court will deny Plaintiff's motion for leave to amend as futile.

---

[4] Notably, Plaintiff's current address on record reflects a residence in Springfield, Missouri.

21

## IV. Conclusion

Defendants demonstrate that the court lacks subject-matter jurisdiction over certain of Plaintiff's claims and that, otherwise, she fails to state plausible claims for relief. Plaintiff's proposed amendments do not cure these deficiencies in her Complaint. Accordingly, the court GRANTS Defendant Mortgage Electronic Registration Systems, Inc.'s Motions to Dismiss [DE 11], Defendant Caliber Home Loans, Inc.'s Motion to Dismiss [DE 19], Defendant U.S. Bank Trust, N.A. as Trustee of LSF9 Master Participation Trust's Motion to Dismiss [DE 23], Motion to Dismiss on Behalf of Defendant Special Proceedings Division of Wake County Clerk [DE 33], and Defendant Trustee Services of Carolina, LLC's Motion to Dismiss Complaint [DE 41] and DENIES the Plaintiff's Motion for Leave to File Amended Complaint [DE 45]. The Clerk of the Court is directed to close this case.

SO ORDERED this ___9th___ day of February, 2022.

_Richard E Myers II_

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

22